Good morning. Your Honor, may it please the Court, it's Jonathan Siegel on behalf of Appellant First Amendment Coalition. When this case began, the government conceded absolutely nothing. They made a GLOMAR response, which refused to confirm or deny the existence of even a single document that was responsive to the First Amendment Coalition's FOIA request. By the end of the case, not only had the GLOMAR response of the government been abandoned, but in fact the First Amendment Coalition had achieved complete success. It received two documents responsive to its FOIA request and a representation from the government that those documents were the entire universe of documents that were available and responsive. So you have two memorandums focused on. Is it your position that each of those disclosures warrant your entitlement to fees, or just the second memorandum? It is our position that both of those memoranda justify the award of fees. Either one... And that kind of is the problem now. Why? Because as long as one is, you can pass Booker L. 1, that might be taken into account as the necessary amount of fees. Correct, Your Honor. That's what I was about to say. Only one memoranda is necessary to award fees, and even... There's something that's really troubling me here. You seem to accept, throughout your briefing, that the standard that applies here is the standard that applied before the amendment to the statute with regard to the causation requirement. Is that right? But the statute seems to me to say something different. It says that a substantially prevailed is a voluntary or unilateral change in position. If the claimant's claim is not insubstantial, it doesn't say anything about the voluntary or unilateral change having to be caused by the lawsuit. And there could be a good reason for that, because we get into exactly the kind of problems we have here. I believe Your Honor is correct in construing the statute broadly, because that construction is supported by the policy of FOIA, which is to encourage the kinds of lawsuits that you're seeing. You're saying, see, there's been, and I want to know this, is there any case since the amendment of the statute, which of all the cases that are cited by both sides that I could find, with regard to the causation standard and how you were pre-statute, is there any post-statute case which says it's still the same standard and all those cases still apply? Your Honor, we haven't seen a case which directly addresses the issue that you're raising. However, in our briefing below, we did quote both the standard and the legislative history of the standard, which suggests that it was meant to be a broadening of the standard and a weakening of the causation. Well, you didn't argue that here, really. It just seems obvious to me that the statute was meant to do something else, which was to include this kind of inquiry, which is apparently an impossible inquiry, because we don't know what caused them to do anything. Yes, Your Honor, you're correct in that we don't know what caused them to do anything in the chronology of events. They just know that there were a bunch of things happening and they finally made a decision. They certainly didn't put any evidence into the record of the justification for what they were doing. And even if we were to apply the more stringent standard that the government suggests applied, and that, you're correct, was more brief than the standard that you're suggesting, the record is clear that the CIA memo came out directly in response to the pressure applied to this case during the pending motion for reconsideration. We don't know that what it came in response to. We know that it came at that time and somebody would have to litigate. And we know the district court didn't do a whole lot with regard to causation, but we don't know. There isn't any evidence from the government, but there is evidence in the record that First Amendment Coalition put in, specifically evidence of the meet and confer that occurred on June 24th and 25th, where the government said, we have a second memorandum that's responsive to this request, and if we provide it to you, do you think this will move the case? The government in their briefing said that the existence of a second memorandum was in response to a Southern District of New York order. However, at the time that the memorandum was revealed to First Amendment Coalition, the Southern District of New York didn't have jurisdiction over this case and had not yet made their order. I was confused about this. Did the District Court of New York ever actually make an order? The chronology goes like this. And no, Your Honor, June 24th and 25th, the government says, First Amendment Coalition, we have a responsive document that has not yet been disclosed. If we give it to you, do you think this is going to move the case? The day after that meet and confer, jurisdiction returns to the Southern District of New York. On June 30th, four days after, five days after the meet and confer, the Southern District of New York says, Orders, turn over to us in camera for review any other responsive memoranda, along with argument as to whether you've waived any exemptions for them. Then on June 3rd, the government emails us confirming that they are going to turn over this memo. And then on July 9th, excuse me, July 3rd, the government emails First Amendment Coalition. On July 9th, the Southern District of New York makes an order rejecting a new round of summary judgment briefing in the Southern District of New York over whether that document or any other responsive memoranda was exempted. Why did they reject it? The government had requested a new round of briefing about first summary. So they're still fighting in the Southern District of New York. There's no court order saying you must produce this document. Never was. Not that I could see your honor. So this document, you know, was to be produced in camera for the private eyes of the Southern District Judge. And then what happened after that was that in California, the government intentionally requested an order to self-dispose of the litigation in your case. Do I have that right? Almost, your honor. To intentionally dispose of the litigation in the Northern California case, and also the document was offered, such revealed to us in California, before it was ever offered or any order existed in the Southern District of New York. I thought it was released the same day. It was. All were released on August 15th in both cases. So it wasn't released to you before it was released? It was offered to us before it was ever revealed in the Southern District of New York, and that's contrary to what the government says in its briefing. So it looks like we have to review the district court's factual findings for clear error. Is that correct? No, your honor. Under what authority do we not have to? The district court applied the incorrect legal standards. So the review here is de novo. Specifically, when the district court made its determination about fees, it stated explicitly the First Amendment Coalition achieved any success in this litigation as a result of the Second Circuit, not as a result of a ruling, and the word ruling is key here in this case. The district court improperly insisted on a ruling, and that is contrary to the plain language of the statute, which talks about voluntary or unilateral capitulation. So you're saying we can't accept that as fact, that that's got to be reviewed as a legal determination? Because it seems like that was her finding regarding causation, regarding the delivery of information, that it was due to, in large part, to the Second Circuit. And so that seems to be, at least from my reading, a district court's view of the causative effect of the ultimate release. Even if we were to accept that that's a question of fact, and even if we were to disregard the fact that the government submitted not even a conclusory declaration about what happened in the black box of its own deliberations, the district court committed clear error. Tell me why. For a number of reasons. One, the district court failed to take into account the lack of evidence submitted by the government. Two, the district court failed to... She said lack of evidence by the government. What do you mean specifically? The government submitted no evidence. We'd argue that there was a burden that we had to meet to show that the document came out. The burden on causation isn't settled law, but that we submitted evidence, both circumstantial evidence of the chronology and also specific evidence of the pressure put forward, that we, that First Amendment coalition, was a cause of the document coming out. Are you saying that the district court just got it flat wrong when they basically concluded that the Second Amendment was also disclosed as a result of the Southern District litigation? Yes, Your Honor. Additionally, the district court failed to account for the government's change of position mid-case before there was ever any Second Circuit opinion. And, in fact, in its statement to facts in its order, the district court incorrectly construed the nature of the government's response to the FOIA request, substituting the government's second response to the FOIA request and not considering the government's first overarching GLOMAR response. May I return to what my original curiosity was as to whether we're considering both memoranda or just the second memoranda? Do you possibly concede that the first memoranda came about through the Southern District of New York and not through California, and that we really should only focus on the second memoranda in this litigation? No, Your Honor. I think the circumstances are most clear regarding the CIA memoranda, but the First Amendment Coalition has an independent basis for fees with regard to the Second Circuit decision. I don't understand why when your rationale is for including the first memoranda in the second memoranda. At the time that the initial First Amendment Coalition FOIA request was made, if I understand your question correctly, there were no memoranda at all. As far as First Amendment Coalition having a justification for claiming part of that success, the pressure applied by this suit and its existence resulted in the government deciding not to appeal the Second Circuit opinion en banc because that would have guaranteed that both litigations proceeded parallel. And this was a concern the government made clear in its briefing on the initial motion to stay in this case, where the government said, we don't want to have conflicting national security FOIA authority in two circuits. Basically, there was some sort of pressure that was applied here that resulted in what happened during the New York litigation. Yes, Your Honor. And also, The New York House of Appeals, because of that cumulative pressure over three or four years of litigation in the face of the obstinacy of the government in terms of not disclosing clearly of what had happened. Yes, Your Honor. Additionally, the Second Circuit mentioned this case in its opinion, even though that hadn't been briefed by any of the parties below. So, obviously, the Second Circuit was watching this case and keeping tabs on the briefing. Additionally, the change in position previous to any Second Circuit opinion also offers an independent justification for FISA, where the government withdrew its initial glomar and confirmed the existence of another responsive memorandum. It was at his litigation. It was simply because the information came out in the main room. That isn't the correct characterization. The revealing of whether the United States killed al-Awlaki may have been made at the highest level of government, but the decision to confirm the existence of a responsive memorandum is a second-order decision that had to have taken place within the Department of Justice and revealed some information that went beyond what the executive, what the President and the Attorney General revealed. Basically, that the Department of Justice was sought out for legal advice, that there was intelligence sufficient to justify making a legal opinion. And all of these reasons were pointed out in the government's own declarations when they initially attempted to justify their glomar with Exemption 5, I believe. Okay. If you want to reserve any time, you should do that. I'll reserve the rest of my time, Your Honor. Thank you so much. Thank you. May it please the Court. Your Honor is entirely correct. This is a clear error standard of review, and there was no clear error as to this. I'll tell you, I have a hard time even getting to clear error because it's hard for me to get past the Department of Justice, I think, failure of duty of candor to the district court, knowing that the white paper had been released by DOJ in the FOIA request from Truthout, that they conceded that to the Second Circuit in some way. The whole time, knowing that that's the main issue back here in Northern District of California, and never disclosed that to the district court. I have a hard time with that. Can you explain that to me? Your Honor, I have come in at the fee stage. I did not handle the FOIA litigation before, but I will say that the plaintiff certainly raised those same concerns in its motion to vacate for vacatur and in its motion for fees. And in response, the government introduced the second declaration of John Bees, who is the Deputy Assistant Attorney General for the Office of Legal Counsel, and he explained in some detail the differences between this draft DOJ white paper and the OLC DOD memorandum that the plaintiffs have tried to say was the same thing. And the district court in this case said it considered all of this, and it said none of this is relevant to fee eligibility. So I understand that. Why did she say that? I'm paraphrasing. Yes, you are paraphrasing because I know that, you know, there's a difference between eligibility and entitlement to fees. Yes, Your Honor. This goes more to entitlement. But it still, still is troubling that, especially given that at least one attorney was counseled for DOJ in both the present case and the Second Circuit appeal. There's one attorney who was on both of those cases. And how, you know, the two courts have a, they didn't have a different complete set of facts in front of us. I'm just having a hard time understanding concession in New York and failure to disclose. And I want you to answer whether or not that would have been critical to the success of the fees in this case if they had disclosed, if DOJ had disclosed that. Because would they not have proceeded in getting that, and wouldn't they have gotten it first? Your Honor, even though the DOJ draft white paper had been leaked at that time and then acknowledged, let's say that I know that the Department of Justice did say that it had been acknowledged, even in this case, and told the district court. So the district court did have that in front of it. Even with that information, you know, the government continued to contest that before the Second Circuit. So this was, there were still arguments that the government was making. And in light of the dispositive weight that the Second Circuit, you know, placed on the release of the white paper, and it was clear in their opinion, I just, I'm trying to understand how the release of that information could not be considered material in this case. Your Honor, I'm not trying not to answer your question, but whether it was material or not, that was the way that the plaintiffs would challenge that was through their motion for reconsideration, which they withdrew because as a result of that Second Circuit opinion, Your Honor, those two documents were, the government was compelled to release them. Well, but what happened is they released it over there, and then the district court here said, hey, is this over, basically? And said, are you guys, can you work this out? And so it seemed to sidetrack or make it seem like the issue was moved, but from looking at the record now, I mean, certainly I'm having a hard time understanding the lack of candor that was owed to the district court when you have the same issue, and I'm not confident that it wouldn't have affected the material difference in the outcome here, and make them eligible and entitled to fees. But, Your Honor, we are speculating because what in fact happened, let's focus on what actually happened, Your Honor. This was a Me Too lawsuit. Well, the plaintiffs in the Southern District. But they didn't have a request from the government before. They did, Your Honor, but. So they weren't coming out of nowhere here. No, they were not. However, at the time that they filed their lawsuit, proceedings in the Southern District were already underway by several months, and. I think by several days, actually. No, Your Honor, actually it was by several months. The first case was, they were both filed in February, as I recall. Yes, but the first New York Times case was filed in December. But they're parallel litigations. They are. In the case law, I think says that they're entitled to counsel fees, notwithstanding the fact that there may be parallel litigations. I think the underlying concept of FOIA is to encourage this type of parallel litigation. They filed their FOIA request before the Southern District. The ACLU and the New York Times in the Southern District, they beat them to the door by a couple of days, and then they were stumbled after that and haven't litigated for four years. Well, in fact, Your Honor, both sides continued to litigate. We did attempt to stay this case so that it would proceed in one, and the court said no. If that had been granted, then there would be no fees in this case, but the result would have been exactly the same because the Southern District compelled the release of the two documents. Actually, it didn't. That's the problem. It didn't. In fact, Your Honor, let's talk about the first memo. No, but let's talk about the second memo. Okay. What the Second Circuit did was, based on these intervening events, which included primarily the leaking of the draft DOJ memorandum, the white paper, based on that, the court said, you have to disclose the OLC DOD memorandum. And, in fact, then it attached it to its amended opinion. And it said, based on this intervening information, we reject all of the basis for your Glomar response. And those were the same arguments. But there were other possible answers after the Glomar response. Actually, Your Honor, the government was making the same arguments for the OLC DOD memorandum as it made for the CIA memorandum. They were the same arguments. Therefore, it ended up capitulating, but nobody accorded it. But let's go back a minute. Can you answer my statutory interpretation question? Why are we even doing this? I mean, as I read the amended statute, it was written really to preclude precisely this kind of inquiry into these causation issues that are really not fathomable anyway. The government probably doesn't know why it did it. It did it because there was a lot of stuff going on, and it finally made some tactical decisions. And my understanding of what this statute says is that there was a voluntary unilateral change position, which there was, right, in this case. Not in this case, Your Honor. Again, Your Honor, our position is they handed them a document that they were still wanting for years. They gave a document to the ACLU and the New York Times. At that point, it was public because in FOIA, disclosure to what? It's disclosure to all. Not the same day. It was because no purpose would have been served once it became public for having the United States say, we have this responsive document. We just gave it to the ACLU and the New York Times because we were compelled to. Excuse me. The second memorandum was followed through and being disclosed in the California litigation. I disagree, Your Honor. Well, wait a second. How is that you can disagree? If I understand this correctly, there was an in-camera review process. Yes, Your Honor. This was confidential information. This was something that the government did not want to make public. It was going to submit it to the Southern District in-camera to see whether or not it should be made public or not. And while that was all going on, they've taken the position that the Southern District, this is still secret material, is being submitted in-camera. And then at the same time in California, they voluntarily disclosed it, which ended that litigation. How can you say it was not voluntarily disclosed? Because that's not exactly how it happened, Your Honor. Tell me how it happened. Here's how it happened. The Second Circuit said, I'm remanding to the District Court. Here are the grounds for the Lomar response. We reject them. We're remanding. You have to begin production of all responsive OLC documents. In-camera to the District Court, along with. And the government wanted to freeze this. It did. And the District Court rejected. Right. Meaning that the government was still fighting. Right. And at that point. And it was at some point before that, it's been represented today, that the government came to orders here and said, if we give you that document, will this case be over? And I do not know about that, Your Honor. But what I would say is. That's not in the declaration somewhere in this case. I think, you know. I don't recall that, Your Honor. But I'm not questioning it. The answer for us is, was it compelled by the combination of the Second Circuit decision and the District Court. That's why I want to go back to the statute. The statute doesn't say anything about was it compelled. It says, was there a voluntary or unilateral change in position by the agency if the complainant's claim is not insubstantial? We know it's not insubstantial, right? Because it prevailed. You're telling me that it prevailed in New York. So was it insubstantial? Right. We are talking about. So the question isn't really a causation question. There is a question about whether there was a voluntary or unilateral change in this case. But where are you getting the causation question? The causation comes from this Court's decision in Church of Scientology and Long v. Iris, which continue to be. When was that case? Church of Scientology was in the 80s. Long v. Iris was in the 90s. And there's a specific. This is a statute that was written after Buchanan and did not incorporate a causation statute standard. And presumably there's a pretty good reason. I haven't looked at the legislative history, but I'm really kind of amazed that nobody agrees with this. Is there any case after this amendment that applies the same standard from the 80s and 90s? Your Honor, there are no other cases that are exactly like this one because. I don't want to know if there's any case of any kind. I don't have an attorney's visa to FOIA that applies a causation standard of the kind you're arguing for. Your Honor, we'll be happy to file a letter next week with the Court. My understanding is there have been. There could be, but I haven't seen it. There have been cases, more recent district court decisions. They do tend to follow that same language in Church of Scientology, which is. I want to know if there's an appellate case. Has anybody taken this language into account? Any appellate case? Or any case which has even looked at the statute and said that this is a different case? Oh, that discusses whether it is different? No, Your Honor, there is not. That has followed up on Your Honor's point. What they do say is that the burden, contrary to what the plaintiff has said, the burden is on the plaintiff to come in and present convincing evidence, and that's the language from Church of Scientology. Why? Why? Why? Well, the first thing it has to show is that the filing of the FOIA suit was necessary to obtaining the evidence. And second, they have to show that the filing of the FOIA, their FOIA lawsuit had a substantial causative effect. And you concede that it was necessary? No, Your Honor. In fact, if they had not filed, Your Honor, if they had not filed their suit, these two documents would still be available to the public. The government was fighting it in the Second Circuit, the Southern District case, but they were released in the Southern District case. But we don't disagree on that issue. It seems to me that this was voluntarily disclosed in the California litigation while the government in the Southern District was one of the students who was under wraps and submitted his confidential information. So let me ask you this question. But, Your Honor, we did release the redacted CIA memo to the ACLU and the New York Times before the FOIA. Because at that point, Your Honor, under FOIA, disclosure to one is disclosure to all. But that happened in the school immediately after you decided to volunteer to release this. Let me listen to the debate more. I want to go on this debate with you. Let's assume we find that there is some legibility here. Then it goes back to the district courts. You're going to have the district court resolve the issue of the entitlement through the feeds, right? Yes, Your Honor. In this court, how serious is the guidance of the district court should we find that there is eligibility? Or do you think that we should stay silent in the background and let the district court just then grapple with that issue in the first instance? This court has said in previous cases it is a decision for the district court in the first instance. It is. But, you know, I wonder whether or not some guidance, even under the unique circumstances in this case, may be more than is a practical matter. Well, Your Honor, there are at least four factors that the court is going to look at. But it can consider additional factors as it wishes. I think the court is, the district court is fully capable of making that determination. But, again. Your Honor, I'm trying to find out how can I persuade you that, in fact, these disclosures were made in the other case. And this is a case of FOIA plaintiffs trying to write the code jail. Let me ask you something. With regard to the second document. Yes, Your Honor. Did the government physically hand this document to the lawyers in this case? Your Honor, I was under the impression. I'm sure that plaintiff's counsel can correct me. But I was under the impression it was done electronically. All right. But it was done. It didn't just say, we've released it in New York. Go read it. No, Your Honor. Because there would have been, what would have been gained by forcing, by saying to them, go get it from the ACLU. It was public. But they had a reason to be doing it in this case. They were trying to boot out this case, right? No, Your Honor. They had a reason. We had a reason to do it in the Second Circuit case. And that is because. Your Honor, the grounds for withholding the CIA memo and the grounds for withholding the ULC DOD memo had been exactly the same. And once those grounds were removed, the government did not have additional arguments it was going to make. If that were true, then why would they ask him to brief it in the Southern District and they only capitulated when the judge said he wasn't going to take any briefing? Your Honor, there were some additional arguments they were going to attempt to make. But the district court was not receptive. And it was clear at that point by setting the August 15th deadline that that CIA document was going to be disclosed. So what the government did was disclose the redacted version to the ACLU and the New York Times. And then there was argument about whether it's about the redactions. As I understand it, the government has put in no evidence here, no actual evidence. And, Your Honor. And it certainly is a possible influence that the reason they decided to capitulate in New York is they still have this California case. And if they didn't hand it over in comparison to California, they were going to have to have this motion to reconsider in California. And the likely result in California was going to be to follow the Second Circuit, now that she had the whole story. And so then they were going to have to litigate in California, even if they didn't litigate in New York. Now, is that a possible scenario? No, Your Honor. I mean, I'd like to go back to there was, when you started this, when you started your question, I'm sorry, if you could, I'm getting you at it. It was just my understanding of what happened. There was meet and confers going on in California about whether the case was moved. And they had this one board document. Right. And that started, of course, because the Second Circuit disclosed that first document. Right. So that's when the meet and confer report started. And that started because there was a motion for reconsideration based on what Judge Murguia was talking about, which is something that perhaps lays some lack of candor with regard to the original California litigation. And so that was going on in California. And the court wanted to know whether the case was moved or not. And they had this meet and confirm. And they said, well, we have another document. If we give it to you, will that put out the case? Meanwhile, they're dealing with a district judge in New York. And they are still trying not to release it in New York. And then at some point. And I should add, it's not simply the one document. I think there were maybe ten documents. So this was really a discussion with the district court and the Southern District about numerous documents. And as I said, those two documents, the DOD and the CIA documents, were the two for which the arguments had been the same, the justifications had been the same. So removing the one meant that there was no other argument the government was going to make. So at the time they agreed to release it, which they did physically and even electronically in both places. But they had a problem in New York, which was that maybe they expected the judge to rule against them. They had a problem in California, which is that there could be a motion for reconsideration granted if they continue to argue about this document. So they had problems in both places. How do we know? I mean, what is it likely, what happened was, is it we've always got these problems, there's no point in not releasing it because if we release it, even if we fight in one, we're going to still have the problem in the other. Well, Your Honor, this does come back to that standard of review question. Who has also, who has the burden of proof? And although the plaintiff says that the government should have put information in, in fact, this court said in Church of Scientology, and this goes back to why I think the statute is an out-of-causation requirement because it's so foolish to be doing that. Church of Scientology did say, Your Honor, as long as there's an IRS statute at that point. Well, what courts have said since is that the Open Government Act of 2007 restored what had been cases for those. We cited them in our brief, I think. Since the statute? Yes, there was one since the statute. But Judge Berzal was asking for proof. Yeah. You know, I'll have to send you a letter next week, Your Honor, when I'm back in Washington, but I believe Hajra might have been one of them. We do cite it in our brief that specifically stated. Well, I don't want to say I looked comprehensively, but what I looked at, I couldn't find anything. Yes, and they said that, in fact, it was to reinstate the catalyst theory. Well, yes, but also to define it. And they defined it in this way, which is sensible because of exactly the kinds of problems we're having here. Right. Well, the courts have always treated it as the plaintiff's responsibility and burden to put in the convincing evidence, not the government's. I've been asked that question a way over your time. I know. In terms of the – well, it's our fault. But in terms of the DeNovo-Clarion question on the district court's ruling, is he right that the district court arguably doesn't have the right standard here because they released the documents. First of all, she says largely. Largely doesn't quite answer the question, even on your theory of the case, as a result of the ruling in New York Times, not as a result of the ruling in this case. But, again, the statute isn't about rulings. It isn't, but the biggest piece of evidence in this case, Your Honor, was that Second Circuit opinion because the government treated that as effectively compelling the government's release of those documents. It wasn't a ruling in this case. And it didn't have to be as a result of the ruling in this case. Well, the district court's decision reflects the fact – finding a fact reflects the fact that the disclosures did not happen in this case, Your Honor. They happened in the other case, and the plaintiff received it. Anyway, your time is up. Thank you very much, Your Honor. Can I just ask one question? And just for a smart buy, it seems to me that maybe counsel may both agree on one thing. This is not exactly a slam-dunk case. Could this be a case that might be appropriate for BDA? We're talking about money-paying services. Your Honor, we're already paying out money in the Second Circuit litigation. I mean, they're the ones who actually won these documents. And because all of the claims – Can you answer just those three questions? Is it not possible for two good-faith BOIA plaintiffs in two separate proceedings or parallel proceedings to seek – seeking the same materials to be allowed recovery? It seems like when you look at the intent – Actually, Your Honor, Congress intended there would be as easily viewed as possible by the public. I'm just wondering if that's – We wouldn't rule that out. But there's a reason, I think, why there is a complete absence of case law with two unrelated requesters seeking money for the same disclosure of the same document. It doesn't tend to come up. Because in each case, you would need to have factual findings by the district court that this was, you know, a substantial consequence. I would say, though, that if there was ever a case, this might be one. And that's why I think the question of mediation is an interesting one. There was one point that Your Honor raised that I wanted to, if I could just very briefly address, about the in-camera part of it. Yes, the order was in the Second Circuit for the district court, for the Southern District, to review those remaining OLC responsive documents in camera. However, that was so that if the government wanted additional redactions or wanted to make some argument that waiver didn't apply, it could do so. So there was no reason for it not to release the CIA document to the ACLU and The New York Times if it wasn't going to make those arguments. And arguments occurred afterwards where those two parties, I believe, challenged some of the redactions. Excuse me. This is something that should be treated as part of mediation. Thank you, Your Honor. Thank you very much. Thank you for your help. Your Honor, a few things. First of all, I'd like to make absolutely certain that the panel looks at pages 421 and 422 of the evidentiary record, the Declaration of Thomas Burke, which clearly states that in the meet and confer process, before things went back to the Southern District of New York, not only did the government say there's an additional responsive document, but the government said it's our hopes that this document moves the case. And there's a lot of discussion of this August 15th deadline, which was set by. . . What was the August 15th deadline? It's the deadline that the government said was set by the district court in the Southern District of New York. The August 15th deadline was first disclosed, according to page 422 of the evidentiary record, to First Amendment coalition and was a government-generated deadline that was then accepted by the district court and adopted by the district court in the Southern District of New York, not one that came down from the judge, but one that came up from the government. So that's your coalition. You did five coalitions. Is that correct? Yes, Your Honor. Additionally, you had asked a question about mediation. The parties attempted to mediate. We enrolled in the Ninth Circuit mediation program, and there was some back and forth, but the government's position was that no fee award, little to no fee award, was necessary.  We were due maybe $1,000 worth of fees, and they didn't want to come and sit down. So mediation's already been attempted. Thirdly, there's some discussion about the significance of the white paper, and the government took the position that the white paper, that there was candor, but the government merely said that it had been acknowledged and did not say that it was released, and our court seized on that distinction in order to avoid considering it. Once the opinion came out, they could have corrected that, even after the opinion came out. In other words, the fact that you relied on that distinction, in other words, they might have thought the distinction didn't matter until she relied on it, but once she relied on it, it could have been corrected. And the government's position that it didn't matter was steadfast, that the white paper didn't matter. A church of Scientology, what do we do in search of Scientology? Because it seems like that is the law regarding required substantial cost of effect, or do you disagree? First of all, it was the law before the statute was amended to take a much broader approach. I don't think you did. I think you're arguing with Judge Burr's own race. It's an argument that is. The answer is no, you didn't argue it in your brief, did you? Not in our appellate briefing. So the Church of Scientology. We assume the Church of Scientology. That's correct. But even if the Church of Scientology does apply, First Amendment Coalition put forth more than circumstantial evidence of causation, and additionally, there are cases, the government didn't put a declaration in here, but there's at least one case that's been cited, I believe it's the Baker case, where the government did put in a declaration that said this case was not the cause of the production of a document. And the court, even with a declaration like that, said, well, the balance of the evidence shows that that declaration doesn't hold water. I mean, the problem is that when you're talking about, you know, in order to make causation decisions sensibly in a case like this, you have to get into the work product and, you know, mindset of the government, which, you know, why did they make the decision, which is they're not going to do it. And so it's somewhat mysterious. I agree, Your Honor. The point is the government didn't even try. The government, to support, you know, Exemption 5. So the burden is on you, but your argument is as long as you have circumstantial evidence, you should prevail unless they're going to come up and show something else. We have more than circumstantial evidence. We also have statements from the government that say that we're providing you with this government and providing you with the CIA memo in hopes that it moves the case. Okay. Thank you very much, Your Honor. Thank you. Is there something else you're saying, Your Honor? It's not what you're regular, but. I'm not familiar with any of the letter on page 8 of our briefings that they had. I think a reference to the work of the National Cancer Association, and it was simply a statement from. That case is before it also, before I flooded that case. That case is not, was before the amendment. Because it was actually after the amendment, but it said the amendment was not retroactive. Right. But it was simply. So, therefore, it did not resolve the question. Thank you very much. The case in the first amendment, Coalition v. DOJ, is submitted. We're going to take a short break.
judges: Berzon, Murguia, Block